
**E-FILED**
Thursday, 08 May, 2008  04:53:27 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| In re BRETT JAMES KITSON and COURTNEY LYNN KITSON,<br><br>Debtors.<br><br>DALE ALLEMAN and ILLECTRONICS, INC.,<br><br>Appellants,<br><br>v.<br><br>BRETT JAMES KITSON,<br><br>Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Nos.  07-3312<br>)   and  07-3313<br>)<br>) Appeal from the<br>) U.S. Bankruptcy Court<br>) Central District of Illinois<br>) Hon. Mary Gorman, presiding<br>) Bankruptcy No. 04-75009<br>) |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Appellants Dale Alleman and Illectronics, Inc.'s (Illectronics) (collectively the Appellants) appeal from adverse judgments in adversary proceedings that the Appellants brought against the Debtor Brett James Kitson (Kitson). The Appellants each brought an adversary proceeding to deny Kitson a discharge in bankruptcy and to have Kitson's debts to the Appellants declared to be non-dischargeable. 11 U.S.C. §§ 523(a), 727(a). The two adversary proceedings

1

were consolidated for trial.  The Bankruptcy Court entered judgment in favor of Kitson on all claims.  For the reasons set forth below, this Court affirms the decision of the Bankruptcy Court.

<u>STATEMENT OF FACTS</u>

Alleman owns and is the chief executive of Illectronics.  Illectronics operated a consumer electronics business under the name of Team Electronics Superstore.  <u>Supplemental Record on Appeal (d/e 4)</u>, attached <u>Transcript of Proceedings on July 27, 2007 Volume I (Trial Transcript Vol. I)</u>, at 90.  Kitson worked for Illectronics beginning in 1989.  <u>Trial Transcript Vol. I</u>, at 25.  In 2000-03, Kitson also owned a corporation called Kitson Enterprises, Inc. (Kitson Enterprises).  Kitson Enterprises operated a used car business under the name of BK Motorsports.  In early 2003, Kitson quit his job at Illectronics to work full-time at Kitson Enterprises.  <u>Id.</u>, at 24-25.  Kitson Enterprises was experiencing financial difficulties.  In the fall of 2003, Kitson Enterprises owed $15,000.00 to A.F.C., the company that financed its inventory.  At the same time, Alleman discussed the possibility of Kitson coming back to work for Illectronics.  Kitson testified that Alleman offered to pay $15,000.00 to A.F.C. if Kitson would return to work at Illectronics.  <u>Id.</u>, at 26.  Kitson testified that the parties agreed that

Kitson would take a $5,000.00 reduction in his annual salary, from $55,000.00 to $50,000.00, in exchange for the $15,000.00 payment. Id., at 27, 54. Kitson denied that he was otherwise obligated to repay the $15,000.00 payment. Id., at 27.

Alleman testified that the parties agreed that Kitson would pay the $15,000.00 back with 12 percent interest, with regular payments of $ 90.88 that were deducted from Kitson's salary on a bi-weekly basis. Trial Transcript Vol. I, at 92-94. Alleman testified that he gave Kitson a four-year amortization schedule of payments in October 2003. Id. Alleman admitted that the parties did not memorialize the agreement in any document. Id. Furthermore, Alleman admitted that Illectronics' pay records do not show any deductions of payments on the loan; the records only show payment of a $50,000.00 salary to Kitson. Supplemental Record on Appeal (d/e 4), attached Transcript of Proceedings on July 27, 2007 Volume II (Trial Transcript Vol. II), at 137.

Both parties, however, stipulated to yet a third version of this agreement. According to the undisputed facts in the Joint Pretrial Statement, "Plaintiff agreed to loan Defendant Brett Kitson $15,000 on the condition that the loan was to be repaid by a yearly $5,000 reduction in pay

from Illectronics, Inc." <u>Record on Appeal (d/e 1)</u>, Exhibit 8, <u>Joint Pretrial</u> <u>Statement</u>, ¶ 5. The Pretrial Statement does not mention either a four-year amortization or any payment of any interest.

Regardless of the exact nature of the agreement, on September 26, 2003, Alleman paid $15,000.00 to A.F.C. <u>Trial Exhibits</u>, Plaintiffs' Exhibit 8, <u>Cashiers Check to A.F.C</u>. Kitson shut down the used car business in October 2003. <u>Trial Transcript Vol. I</u>, at 13. That same month, Kitson returned to work at Illectronics at an annual salary of $50,000.00. <u>Id.</u>, at 25, 54. Upon his return, Kitson was the Executive Vice-President of Illectronics. He reported directly to Alleman. Kitson was in charge of sales and operations. <u>Trial Transcript Vol. I</u>, at 31.

At some point thereafter, Alleman determined that inventory was missing. Alleman suspected employee theft. In the summer of 2004, he used a company laptop computer to log onto the eBay auction web site. Alleman testified that Kitson borrowed the laptop and returned it to Alleman earlier that day. <u>Id.</u>, at 105. The laptop was not password protected. The lack of password protection meant that a person could log onto the laptop and use it without first entering a password. <u>Trial</u> <u>Transcript Vol. II</u>, at 150.

When Alleman went to the eBay web site, the username "biggupstairs" appeared on the log in page.  <u>Trial Transcript Vol. I</u>, at 104-06.  Alleman and Illectronics did not use the biggupstairs name.  <u>Id.</u>, at 107-08.  Alleman looked at the activity of biggupstairs on eBay.  Biggupstairs sold consumer electronic equipment that was similar to the equipment sold by Illectronics.  Alleman suspected that Kitson or some other employee at Illectronics was stealing inventory and selling the merchandise on eBay under the biggupstairs username.

Alleman set up a sting operation to catch the thief.  Alleman watched the biggupstairs offerings on eBay.  He saw a JVC television (Television) offered for sale.  The biggupstairs offering advertisement had a photograph of the Television's carton, including the serial number.  The serial number matched an identical JVC television in Illectronics' inventory.  <u>Trial Transcript Vol. I</u>, at 109-10.  Alleman marked a red "X" on the carton of the television in Illectronics' inventory and recorded the serial number.  Alleman arranged for a person in Colorado to bid on the Television.  The person in Colorado was the successful bidder for the Television.  Upon delivery in Colorado, the Television had the red "X" on the side of the carton and matched the serial number of the television that was in Illectronics'

inventory.  Trial Transcript Vol. I, at 111.

According to Alleman, the biggupstairs seller on eBay directed payment to a recipient identified by the email address "execfitness@aol.com".  Trial Transcript Vol. I, at 122.  Alleman testified that Kitson used execfitness@aol.com as his email address.  Trial Transcript Vol. II, at 180.  Alleman testified that neither he nor Illectronics received any payment for the sale of the Television.  Trial Transcript Vol. I, at 121.

After completing the sting, Alleman held a meeting with staff generally in which he said: "Hey, we know something is going on here."  Trial Transcript Vol. I, at 112.  Alleman stated that, thereafter, biggupstairs stopped offering merchandise for sale on eBay.  Id.  Alleman testified, that instead, biggupstairs changed its name to "bestbuy1210" offering merchandise for sale that was remarkably similar to the merchandise offered for sale by biggupstairs.  Trial Transcript Vol. I, at 117-18.  Alleman did not fire or otherwise discipline Kitson.

Alleman did a physical inventory on September 14, 2004.  Alleman compared the results with the sales activity records of biggupstairs and bestbuy1210 on eBay.  Alleman determined that biggupstairs and bestbuy1210 had sold consumer electronic equipment that matched

Illectronics' missing inventory.  Id., at 108.  Based on that comparison, Alleman stated that the cost of the Illectronics inventory sold on those sites was $27,862.67.  Id., at 126-27.

Kitson admitted that he occasionally sold various items on eBay.  Trial Transcript Vol. I, at 14-15.  He could not recall whether he used the names biggupstairs, bestbuy1210, or execfitness.  Id., at 32.  He also testified that Alleman instructed him to sell Illectronics inventory on eBay under his own name.  Id., at 34, 48, 58.  Kitson explained that Illectronics was beginning to sell products on the Internet through eBay.  Id.  Illectronics, however, had problems with manufacturers' prohibitions against selling outside of Illectronics' geographical territories.  Manufacturers assigned territories to authorized dealers, and many manufacturers did not allow dealers to sell merchandise outside the designated territory.  Selling on the Internet violated these territorial restrictions because the purchasers could be anywhere.  Id., at 57.  According to Kitson, Alleman instructed Kitson and others to sell Illectronics' merchandise under their own names through eBay so that the manufacturers would not know that Illectronics was selling outside its territory.  Kitson testified at trial that he turned over the proceeds from all such sales to Alleman.  Id., at 58, 81.

Another former Illectronics employee named Jason McArty also testified that Illectronics directed employees to sell inventory over the Internet under their own names.  <u>Trial Transcript Vol. II</u>, at 203.  According to McArty, Alleman was present at regular sales meeting when sales managers at Illectronics told employees to sell the product over the Internet in their own names.  <u>Trial Transcript Vol. II</u>, at 214.

Alleman denied ever authorizing employees to sell Illectronics' inventory over the Internet under their own names.  <u>Trial Transcript Vol. I</u>, at 96.  Alleman testified that Illectronics started selling merchandise over the Internet in 2001.  <u>Trial Transcript Vol. II</u>, at 144.  Alleman testified that Illectronics eventually sold merchandise on the Internet under the name "thedeepdiscount".  <u>Trial Transcript Vol. I</u>, at 96.  In 2005, Illectronics completed the transition to an Internet and telephone order sales operation; its retail outlets, including the store in Decatur, Illinois, were all closed.  <u>Id.</u>, at 91.  Alleman acknowledged Illectronics' Internet sales violated the territorial restrictions in its agreements with some manufacturers.  Alleman testified at trial that Yamaha Electronics dropped Illectronics as an authorized dealer because Illectronics made sales outside of its territory through the Internet.  <u>Id.</u>, at 96-97.

On November 11, 2004, Kitson and his wife Courtney Kitson (collectively the Debtors) filed a joint Chapter 7 bankruptcy petition (Petition).  Trial Transcript Vol. I, at 55.  The representations in the Petition and the accompanying Statement of Financial Affairs (Statement) and Schedules were all made under oath by the Debtors.  Record on Appeal (d/e 1), Exhibit 5, Trial Exhibits (Trial Exhibit), Trial Exhibit 1 Bankruptcy Petition and attached Statement and Schedules, Petition, at 2, Statement, at 7, and Schedules, at 21.  The Statement represented that the Debtors did not receive any income from business operations during the two years immediately before they filed the Petition.  Statement, ¶ 2.  Kitson testified that he did not receive any income from Kitson Enterprises during the two-year period before filing the Petition.  Trial Transcript Vol. I, at 14.  The 2002 Kitson Enterprises corporate tax return showed gross corporate income of $52,329.00, but no net income, no salary or wages paid to anyone, no compensation paid to officers, and no distributions to shareholders.  Trial Exhibit 2, Kitson Enterprises 2002 Form 1120 Tax Return, at 1.

The Statement also contained certain errors.  The Statement required the Debtors to list any lawsuit that was pending one year immediately before filing in which one of the Debtors was a party.  The Debtors listed

9

one small claims suit filed by Midwest Credit and Collection.  Statement,
¶ 4.  In fact, Kitson was a defendant in four lawsuits during the one-year
period.  The Decatur Club filed a small claims action against Kitson on
January 1, 2004, but the matter was continued generally.  The Decatur Club
took no further action, and the suit was dismissed for want of prosecution.
Discover Bank sued Kitson on May 27, 2004, and continued the matter on
July 23, 2004.  Discover Bank resumed prosecution of the case in April
2005, and secured a default judgment for $9,955.58.  Finally, Monogram
Credit Card Bank of Georgia filed suit against Kitson on July 2, 2004, and
secured a default judgment on August 2, 2004, in the sum of $1,517.64.
Trial Exhibit 10, Macon County Circuit Court Civil Disposition Summaries.

Kitson listed his prior business as "BK Motorsports" instead of
"Kitson Enterprises, Inc."   The Debtors also omitted the taxpayer
identification number for the business.  Statement, ¶ 18.  The Debtors also
stated that they did not use an accountant during the two years immediately
before filing.  Id., ¶ 19.  In fact, they had an accountant named Ron Manis
who kept copies of their records.  Manis was the same accountant that
Alleman used.  Trial Transcript Vol. I, at 64.

The Debtors' Schedules were also attached.  The Schedules showed

total assets of $122,200.00, consisting of the Debtors' home, valued at $100,000.00, the Debtors' 2000 Lincoln automobile, valued at $18,000.00, a potential 2004 tax refund of $2,900.00, a checking account valued at $100.00, household goods valued at $1,000.00, and clothing valued at $200.00. The mortgage liens on the residence secured debts totaling $98,000.00, and the Debtors claimed a homestead exemption in the remaining $2,000.00 in equity. The lien of the automobile secured a debt totaling $18,000.00. The Debtors claimed that the remaining assets were exempt. <u>Summary of Schedules and Schedules A, B, and C</u>.

In addition to the secured claims, the Schedules listed $116,110.19 in unsecured claims. Midwest Credit and Collection and Discover Bank were listed as unsecured creditors. The Decatur Club and Monogram Credit Card Bank of Georgia were not listed, although numerous other credit card companies were listed. <u>Schedule F</u>.

The Schedules also contained certain errors. The Debtors did not list any jewelry, but each had a wedding ring. <u>Trial Transcript Vol. I</u>, at 50. The Debtors did not list $6,300.00 in loans from Kitson's father and

mother.[1]  Id., at 85.  These loans were not evidenced by any document.  His mother Barbara Jane Kitson testified that she and Kitson's father wanted to help Kitson out and did not expect him to pay back the money, but she admitted that they would certainly accept repayment if Kitson decided to do so.  Id., at 86-88.

The Bankruptcy Trustee had some concerns that the Debtors may have understated the value of their household possessions.  He secured an ex parte order to inspect the Debtors' home, including the contents.  Trial Exhibits, Defendant's Exhibit 3.  He presented the order to the Debtors and inspected the home.  Trial Transcript Vol. I, at 70-71.  The Trustee took no further action after inspecting the home.

The Debtors did not list Alleman or Illectronics as creditors.  Alleman claimed that Kitson owed the unpaid balance of the $15,000.00, plus 12 percent interest.   Illectronics claimed that he owed approximately $27,000.00 for the inventory that Kitson stole and sold over the Internet. Kitson testified that he did not believe that he owed anything to either Alleman or Illectronics.  As explained above, Kitson testified that Alleman

---

[1]At trial, Barbara Jane Kitson identified herself as the wife of Kitson's father rather than Kitson's mother.  Trial Transcript Vol. I, at 84.  She, thus, may be his stepmother; the record is unclear.  The Court refers to her as his mother in the Opinion.

paid the $15,000.00 in exchange for Kitson's agreement to go back to work for Illectronics at a reduced salary. Kitson testified that he did not agree to pay the money back in any other manner if his employment ended early. Kitson denied that he stole anything from Illectronics, and so, owed it nothing.

Later in November 2004, after Kitson filed bankruptcy, Alleman gave Kitson 30 days notice that his employment was terminated at Illectronics. Trial Transcript Vol. I, at 29. Kitson worked the 30 days and ended his employment at Illectronics in late December 2004. On December 23, 2004, Alleman had Kitson arrested for stealing the Television. Id., at 73. The state prosecutors ultimately decided not to prosecute Kitson. Id., at 74.

The Bankruptcy Court held the trial in this case on July 27, 2007. Kitson was asked about his records. Kitson testified that he disposed of some of the Kitson Enterprises records that were in his possession after he filed bankruptcy. Trial Transcript Vol. I, at 44. He also testified that his accountant Manis had copies of his financial records. He testified that he and his wife executed releases to authorize Alleman and Illectronics to review these records, but Alleman and Illectronics never inspected the records in Manis' possession. Trial Transcript Vol I., at 64-65.

At the end of the trial, the Bankruptcy Court took the matter under advisement.  On September 27, 2007, the Bankruptcy Court conducted a telephone conference and made findings of fact and conclusions of law orally.  The Bankruptcy Court found initially that both Alleman and Kitson lacked credibility.  The Bankruptcy Court decided not to write an opinion in order to avoid publishing a document that contained a finding that neither of these men were credible witnesses.  <u>Supplemental Record on Appeal (d/e 4)</u>, attached <u>Transcript of Proceedings on September 27, 2007 (Opinion Transcript)</u>, at 2-3.

The Court then addressed the claims.  The Court stated that the Appellants did not clearly plead the precise statutory basis on which they claimed that Kitson should be denied a discharge.  The Court listed Bankruptcy Code §§ 727(a)(2), 727(a)(3), and 727(a)(4) as possible theories on which the Appellants claimed that Kitson should be denied a discharge.  <u>Id.</u>, at 6-7.  These subsections provide:

§ 727.  Discharge

(a)    The court shall grant the debtor a discharge, unless–
. . . .
(2)    the debtor, with intent to hinder, delay, or defraud a
         creditor or an officer of the estate charged with custody of
         property under this title, has transferred, removed,

destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

    (A)   property of the debtor, within one year before the date of the filing of the petition; or

    (B)   property of the estate, after the date of the filing of the petition;

(3)   the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4)   the debtor knowingly and fraudulently, in or in connection with the case–

    (A)   made a false oath or account;

    (B)   presented or used a false claim;

    (C)   gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

    (D)   withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(4).

15

The Bankruptcy Court then held that the Appellants failed to prove the necessary elements under any of these theories.  The Bankruptcy Court explained that § 727(a)(2) required evidence of the destruction or concealment of property of the estate.  The Court found that there was no evidence of any destruction or concealment of property of the estate. Opinion Transcript, at 6.  The Bankruptcy Court stated that § 727(a)(3) required proof that destroyed records related to the debtor's financial condition and that the records were material.  The Bankruptcy Court stated that the Appellants failed to demonstrate these elements.  Id., at 7.

The Bankruptcy Court stated that § 727(a)(4) required evidence of a false statement under oath that was material and that was made fraudulently.  Id., at 7.  The Bankruptcy Court stated that the Appellants failed to demonstrate that any of the errors or omissions on the Statement and Schedules were material.  The Bankruptcy Court cited a few examples. The Court noted that wedding rings were exempt property, so failure to list them did not prejudice creditors.  The Bankruptcy Court rejected the Appellants' claim that Kitson misrepresented the income that he received from Kitson Enterprises.  The Appellants had claimed that Kitson was obligated to list the gross income of Kitson Enterprises on the Statement.

16

The Bankruptcy Court found that the Statement only required Kitson to list personal income that he received from Kitson Enterprises, and the Appellants failed to present evidence that he received any income from Kitson Enterprises during this period.  The Bankruptcy Court found that the other errors also were not material.  <u>Id.</u>, at 9-11.

The Bankruptcy Court then addressed the Appellants' claims that the debts owed to them should be declared non-dischargeable.  The Bankruptcy Court found that the Appellants were proceeding under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).  The subsections provide:

§ 523.  Exceptions to discharge

(a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . . .

(2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

. . . .

(4)    for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . .

> (6)    for willful and malicious injury by the debtor to another
>        entity or to the property of another entity;

11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The Bankruptcy Court found that the $15,000.00 debt to Alleman did not fit any of the three subsections.  Kitson and Alleman both testified that Alleman made the $15,000.00 payment in exchange for Kitson's representation that Kitson would come to work for Illectronics.  Kitson kept this promise; he came to work for Illectronics.  There was no false pretenses; there was no embezzlement; there was no willful or malicious conduct. There was no basis for excepting this debt from discharge.

The Bankruptcy Court also rejected Illectronics' claim for an exception from discharge.  Illectronics claimed that Kitson stole inventory.  The Court, however, found that the Appellants failed to prove the theft.  The Court found that the story of the sting operation came up short because the evidence did not tie Kitson to biggupstairs.  The Court found that the Appellants failed to show that the sale proceeds went to Kitson.  The Appellants also failed to present evidence of any other theft; yet Illectronics claimed that Kitson stole $27,000.00 worth of merchandise.  The

Bankruptcy Court also questioned why Alleman allowed Kitson to continue to work at Illectronics after Alleman believed that he caught Kitson red-handed.  The Bankruptcy Court stated that it believed that Alleman may have made up the entire story after the fact.  Since the Appellants did not meet their burden of proof, the Court denied Appellants' claims.  Id., at 20.

The Bankruptcy Court concluded its decision with the following:

> In summary, I -- it appears to me that something was going on at Illectronics regarding internet and eBay sale.  It was very unclear to me what that was.  Mr. Alleman denied that employees were to use their own eBay and PayPal accounts, but he never explained whether there was a separate eBay, only e-mail address, or screen name, or PayPal account for Illectronics. It was all very clear how sales were supposed to occur, and none of the testimony was helpful in sorting it out.

> My overall impression was that neither Mr. Kitson nor Mr. Alleman were totally forthright.  I certainly had the distinctive impression as each of them were testifying that there was more to the story than either wanted to tell.

> Mr. Kitson's memory was incredibly, perhaps unbelievably poor, on virtually every issue, and then all of a sudden in his testimony he was able to pull up individual multi-digit invoice numbers out of his head from years ago.  But it is not to the defendant, Mr. Kitson, to prove the plaintiff's case.

> Mr. Alleman himself obviously embellished his testimony on the agreement to actually pay with interest each pay period on the $15,000 that was paid to Mr. Kitson's creditor.  The pay stubs, for which Mr. Alleman [sic] company issued, showed that the exact opposite of his own testimony occurred.

And, again, and probably most importantly, if Mr. Alleman had actually caught Mr. Kitson stealing in August, why then was Mr. Kitson still working there at Illectronics in December?  Mr. Alleman and Illectronics have the burden of proof in this case.  They failed to establish required elements of any of the possible causes of action by a preponderance of the evidence.

Opinion Transcript, at 19-20.

## ANALYSIS

The Appellants claim that the Bankruptcy Court erred in not denying Kitson's discharge and in not declaring his debts to them to be non-dischargeable.  They argue that the Bankruptcy Court erred in four respects: (1) the Bankruptcy Court erroneously failed to shift the burden of proof to Kitson once the Appellants showed that Kitson disposed of business records; (2) the Bankruptcy Court erroneously found that Kitson's failure to maintain records did not warrant denial of discharge; (3) the Bankruptcy Court erroneously held that the Appellants failed to prove that Kitson stole the Television from Illectronics; and (4) the Bankruptcy Court erroneously found that Kitson's Schedules were not so materially misleading as to warrant denial of discharge.  The first, second, and fourth issue relate to the denial of discharge.  The third issue relates to the non-dischargeability of Illectronics' claim.  The Court will address the non-dischargeability issue

20

first because the Bankruptcy Court's finding regarding the alleged theft affected the decision on the denial of discharge claims.

This Court reviews the Bankruptcy Court's factual determinations for clear error only. Bankruptcy Rule 8013. A factual finding is clearly erroneous if on reviewing the evidence, this Court is "left with the definite and firm conviction that a mistake has been committed." Matter of Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). The Court reviews the Bankruptcy Court's legal conclusions de novo. Matter of Sheridan, 57 F.3d 627, 633 (7th Cir. 1995). Decisions within the discretion of the Bankruptcy Court may only be reviewed for an abuse of discretion. A decision is an abuse of discretion only if no reasonable person could agree with the Bankruptcy Court. See In re Morris, 223 F.3d 548, 554 (7th Cir. 2000). Under these standards of review, the Court finds no basis to reverse the Bankruptcy Court's decision.

A.   SECTION 523(a) NON-DISCHARGEABILITY CLAIMS

The Appellants alleged that their claims against Kitson were non-dischargeable under Bankruptcy Code §§ 523(a)(2), 523(a)(4), and 523(a)(6). The Appellants presented evidence of essentially one factual basis for these claims: Kitson allegedly stole merchandise from Illectronics.

If true, the theft would render Kitson's debt to Illectronics non-dischargeable under § 523(a)(3) as a debt based on either embezzlement or larceny. The alleged theft has nothing to do with the $15,000.00 loan Alleman made to Kitson. There also was no evidence of fraud or willful or malicious conduct in connection with this loan. The Bankruptcy Court, thus, properly concluded that this debt was dischargeable. The alleged theft only related to Illectronics' claim.

The Bankruptcy Court found that the Appellants failed to prove the theft. The Appellants claim that the Bankruptcy Court erred in this finding. After careful review of the record, the Court cannot say that the Bankruptcy Court's finding was clearly erroneous. The Bankruptcy Court's decision turned primarily on the conclusion that both Alleman and Kitson were not credible. Essentially, the Bankruptcy Court did not believe either man's story; the Appellants, however, had the burden of proof. Since Alleman was not credible, the Appellants did not meet their burden on the theft claim.

The Court will not disturb the trial court's credibility findings. See In re O'Hearn, 339 F.3d 559, 565-67 (7th Cir. 2003); Matter of Generes, 69 F.3d 821, 824-25 (7th Cir. 1995). The Bankruptcy Court observed the witnesses and was in the best position to determine credibility. The record

22

also contains ample evidence that supports the Bankruptcy Court's conclusion. Kitson could not remember much of anything when examined by Appellants' counsel; yet, when examined by his attorney, he recalled specific documents in great detail. See Trial Transcript Vol. I, at 17-18, 32-44, 59-62. Alleman admitted that Illectronics made sales on the Internet under the name thedeepdiscount in violation of the territorial restrictions in its agreements with manufacturers. The Bankruptcy Court also found that Alleman embellished the details regarding the repayment of the $15,000.00 loan. The record supports the Bankruptcy Court's observation on this point.[2] In light the support in the record, the Court sees no reason to disturb the Bankruptcy Court's conclusion that these two witnesses lacked credibility.

The Appellants' theft case depended on Alleman's testimony. The documentary evidence and photographs show, at best, that: (1) the Television was sold to Alleman's contact in Colorado on eBay by someone using the name biggupstairs; (2) the Television was from Illectronics'

---

[2]As detailed above, Alleman stipulated in the Joint Pretrial Statement that the $15,000.00 loan was to be repaid by a reduction in Kitson's salary of $5,000.00 for three years. Yet, Alleman testified at trial that Kitson agreed to pay the $15,000.00 loan back over four years with 12 percent interest. He also testified that bi-weekly payments of $90.88 were deducted from Kitson's pay. Alleman conceded that Illectronics' pay records contradicted his testimony.

inventory; (3) the payment for the Television was directed to someone who used an email address of execfitness@aol.com; and (4) some entity or person using the names biggupstairs and bestbuy1210 sold consumer electronic equipment similar to the merchandise missing from Illectronics' inventory.  Alleman's testimony, however, was the only evidence that connected Kitson to the transaction.  Alleman testified that the username biggupstairs was on the company laptop after Kitson borrowed it.  Alleman testified that Kitson used the email address execfitness@aol.com.  Kitson admitted that at one time in the past he considered starting a business called Executive Fitness, but he did not start any such business and did not admit to using the particular email address.  Alleman's testimony was crucial to the Appellants' proof.  Since Alleman lacked credibility, the Bankruptcy Court concluded that the Appellants had failed to prove the connection between Kitson and the sting.  Given the lack of credibility, the Court cannot say that the Bankruptcy Court's finding was clearly erroneous.

B.    SECTION 727(a) DENIAL OF DISCHARGE CLAIMS

The Appellants argue on appeal that the Bankruptcy Court erred in not denying Kitson a discharge because Kitson failed to maintain records and made false statements on his Statement and Schedules.  These theories

raise issues under §§ 727(a)(3) and 727(a)(4), quoted above.   The Appellants also argue that the Bankruptcy Court erred as a matter of law because the Court did not shift the burden of proof to Kitson after the Appellants showed that Kitson failed to maintain records.

    1.   <u>Section 727(a)(3)</u>

Section 727(a)(3) imposes on a debtor an obligation to maintain sufficient records to allow the trustee and creditors to evaluate the debtor's financial condition.  The party challenging the discharge has the initial burden to show that Kitson's books and records were inadequate.  Upon making this showing, the Debtor has the burden of production to put forth a reason for the lack of records or the sufficiency of the records.  <u>In re Costello</u>, 299 B.R. 882, 897 (Bankr. N.D.Ill. 2003).  The party challenging the discharge, however, always bears the ultimate burden of proof on the issue of denial of discharge.  <u>In re Martin</u>, 698 F.2d 883, 887 (7th Cir. 1983).

In this case, the Bankruptcy Court concluded that the Appellants failed to make the initial showing that Kitson's records were inadequate. This determination was not clearly erroneous.  The Appellants established that Kitson disposed of some business records after filing bankruptcy.

Kitson, however, filed a personal Chapter 7 bankruptcy.  The Appellants did not present any evidence to show that the business records were needed to evaluate Kitson's individual bankruptcy.  The evidence showed a failing business that Kitson had shut down almost a year before filing.  The 2002 tax return from Kitson Enterprises showed that no income was paid to Kitson personally that year.  Kitson borrowed money from Alleman to pay off a creditor that had a lien on his inventory.  Kitson borrowed $6,300.00 from his parents to keep the business afloat.  This evidence supports the inference that Kitson Enterprises was a liability to Kitson, not an asset.

Moreover, Kitson testified that his accountant, Manis, had copies of his records, and that he had authorized the Appellants to have complete access to those records.  The Appellants presented no evidence regarding the records held by accountant Manis.  Thus, the Appellants failed to meet their initial burden to show that Kitson's records, including those kept by his accountant Manis, were inadequate.  Because the Appellants failed to meet their initial burden, the Court properly did not shift to Kitson the burden of producing an explanation for his disposal of some business records.  There was no clear error.

The Appellants also argue that Kitson failed to keep any records of his

26

eBay-based sales businesses biggupstairs, bestbuy1210, and execfitness.  The Appellants, however, did not prove that Kitson ran any of these businesses.  As explained above, the only evidence connecting Kitson to these businesses was Alleman's testimony, and that testimony lacked credibility.  Because the Appellants failed to prove that Kitson ran these businesses, they failed to prove that Kitson was under any obligation to keep records about these businesses.  The Bankruptcy Court's findings were not clearly erroneous.

    2.   <u>Section 727(a)(4)</u>

Section 727(a)(4) states that a debtor will be denied a discharge if he makes a materially false statement under oath with the intent to defraud his creditors.  The party objecting to discharge under this subsection has the burden to prove: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to defraud; and (5) the statement related to the bankruptcy case in a material way.  <u>In re Costello</u>, 299 B.R. at 899.  Kitson made the representations contained in the Statement and Schedules under oath.  The Appellants identified the following false statements or omissions which they claim on appeal constituted misrepresentations made under oath:

(1)    Kitson falsely represented that he did not receive any income from Kitson Enterprises in the two years before filing bankruptcy;

(2)    Kitson listed his former business as BK Motorsports instead of Kitson Enterprises, Inc., and omitted the tax identification number;

(3)    Kitson omitted his debt to his father from his list of unsecured debts;

(4)    Kitson omitted three of the four lawsuits from the list of suits filed against him within a year of filing bankruptcy;

(5)    Kitson omitted his debts to the Appellants from his list of unsecured debts;

(6)    Kitson omitted any information about the operation of his eBay-based businesses biggupstairs, bestbuy1210, and execfitness; and

(7)    Kitson did not disclose that Manis was his accountant and had his records.

The Appellants failed to prove that the first claimed misrepresentation was false. Kitson testified that he did not receive any income from Kitson Enterprises during the relevant two-year period. The 2002 Kitson Enterprises tax return corroborates that testimony. No other evidence was presented on this point. The Bankruptcy Court's conclusion that this

28

statement was not false was not clearly erroneous.

Appellants argue that Kitson was required to list the gross income of Kitson Enterprises on the Statement. The case cited by the Appellants concerned treatment of income from a Subchapter S corporation. In re Cox, 93 B.R. 625, 626 (Bankr. S.D.Ill. 1988). The income from a Subchapter S corporation is treated as income of the shareholders for tax purposes. 26 U.S.C. § 1366. Thus, the gross corporate income of a Subchapter S corporation may be considered the gross income of the debtor.[3] That is not the case for other corporations.

The evidence indicates that Kitson Enterprises was not a Subchapter S corporation. The 2002 tax return of Kitson Enterprises was not a Subchapter S tax return. Trial Exhibit 2, Kitson Enterprises 2002 Form 1120 Tax Return. Thus, based on the evidence presented, the income of Kitson Enterprises was not part of Kitson's personal income for tax purposes. The Cox case, thus, does not apply.

The Appellants also did not show that Kitson's omission of information about biggupstairs, bestbuy1210, and execfitness was a

---

[3]Also, the Court in Cox reserved ruling on whether the income from a subchapter S corporation should be considered income of the debtor individually for bankruptcy purposes. In re Cox, 93 B.R. at 627, n.5.

misrepresentation because the Appellants did not show that Kitson ran these businesses. Again, the proof of these claims depended on Alleman's testimony, and the Bankruptcy Court found that he lacked credibility.

The failure to list any debt to Illectronics also was not a false statement. Illectronics' claim against Kitson was based on the alleged theft of merchandise. The Bankruptcy Court held that the Appellants did not prove the theft. Kitson's omission of this non-existent debt, therefore, was not false.

The omission of Alleman's claim, however, was a misrepresentation. The evidence was unclear as to the terms of the $15,000.00 loan, but the Bankruptcy Court found that there was a loan on some terms. The obligation to Alleman should have been listed.

The remaining representations listed above were also false. Kitson also knew that these representations were false. The Appellants, thus, needed to present evidence that Kitson made these misrepresentations with an intent to defraud and that the misrepresentations related to the bankruptcy in a material way. In re Costello, 299 B.R. at 899.

The Bankruptcy Court concluded that the Appellants failed to prove that any of these misrepresentations were material. This finding was not

clearly erroneous.  The Debtors listed $116,000.00 in unsecured claims and had no assets with which to make any distribution.  All of the Debtors' assets were either exempt or fully encumbered.  In this situation, the omission of the debt to Kitson's parents and to Alleman was not material. Kitson's parents and Alleman would not have received any distribution anyway so they were not adversely affected.  The omission also did not affect other unsecured creditors since there was no distribution to them either.  Furthermore, Kitson still worked for Illectronics at the time he filed bankruptcy, so he was continuing to satisfy his obligations on the Alleman debt.  He may well have innocently, but incorrectly, believed that he did not need to list the obligation.

Similarly, the finding that the omission of the lawsuits was not material was not clearly erroneous.  The suits were not assets of the estate because Kitson was the defendant.  Furthermore, the judgment creditors in these actions did not have liens on property that might have been avoided for the benefit of other creditors because the Debtors had no available equity in any property.  The only non-exempt assets were the home and the car, and the non-exempt value of those assets was fully encumbered by mortgages and security interests.  Thus, the Bankruptcy Court could

reasonably conclude that the omission of these collection actions from the Statement had no material effect on the bankruptcy.

The Bankruptcy Court concluded that the designation of Kitson's former business as BK Motorsports instead of Kitson Enterprises, and the omission of the taxpayer identification number, were not material. This was not clearly erroneous under the circumstances. The business was operated under the name BK Motorsports. The Bankruptcy Court could reasonably conclude that listing the business under that name effectively disclosed the existence of the business. Furthermore, there was no evidence that the business had any assets that could be used for the benefit of the bankruptcy estate. Thus, the Bankruptcy Court could conclude that this method of disclosure did not materially affect the bankruptcy.

Last, Kitson did not disclose the identity of his accountant or the fact that the accountant had financial records. The Appellants, however, did not present evidence of the contents of those records, or any other evidence of any other information that the accountant possessed about Kitson. The Appellant failed to present such information even though Kitson authorized the Appellants to review all of his records in the accountant's possession, and Alleman used the same accountant. The lack of evidence supports the

Bankruptcy Court's conclusion that the Appellants failed to show that the omission was material.  The Court, therefore, affirms the decision of the Bankruptcy Court.

THEREFORE, the decision of the Bankruptcy Court is AFFIRMED. All pending motions are denied as moot.  These cases are closed.

IT IS THEREFORE SO ORDERED.

ENTER:   May 8, 2008

FOR THE COURT:

s/  Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE